## CALIFORNIA NORTHERN RAILROAD COMPANY *v.* BOARD OF SUPERVISORS OF BUTTE COUNTY.

UNDER the Act of 1860, (Stat. 1860, 133) relative to the issuance of the Bonds of Butte county to the California Northern Railroad Company in certain contingencies, the *basis* upon which the Supervisors are to proceed in estimating the work done by the Company, so as to entitle it to bonds, is the *actual expenditure* by the Company, and not *the value of the work*.   This actual expenditure, connected with proof of the other facts required by the statute, *prima facie* constitutes the Company's claim on the county for the bonds.

The county might refuse to issue the bonds if the expenditures were not really made, or if fraud has been committed in the contracts for such expenditures.

The Board of Supervisors act ministerially in the issuance of bonds under this act, and *mandamus* lies if they improperly refuse.

Under the second section of the act no proceedings can be taken by the Company against the Board for refusal to issue the bonds until ten days from the time of this decision upon the "estimate of expenditures" presented by the Company.   During that period any tax-payer has a right to institute proceedings in the District Court to review the action of the Board.

The proceeding of the tax-payer in the District Court contemplated by this statute is a proceeding by *certiorari* in the form and according to the course of that writ, and the issuance of the writ is necessary to stay the proceedings beyond the ten days, though probably no formal order of injunction is necessary.

APPEAL from the Fifteenth District.

Application for mandamus to compel the Board of Supervisors of Butte county to issue $32,000 of Butte county bonds, under the Act of March 14th, 1860, (Stat. 1860, 90) and the Act of March 29th, 1860, (Stat. 1860, 133) amendatory thereof.

Upon the application to the Board for the issuance of the bonds to the Railroad Company, one Clymer, citizen and tax-payer of the

county, filed a remonstrance against the issuing of the bonds, but upon what grounds does not appear. The Board decided against the remonstrance, and further decided to issue bonds to the amount of $10,000. Whereupon, within ten days after the decision, the remonstrant began an action in the District Court in the nature of a bill in equity, but for what purpose is not shown, except that it was to test the action of the Supervisors. No writ of *certiorari* for injunction order was asked or issued.

After hearing the original application to issue the bonds, the Supervisors found the following facts :

1. That the Railroad Company had given to the County of Butte the bond for $100,000, as required by Section 6, Laws of 1860, 135, which bond was accepted and approved by the Board of Supervisors.

2. That the Railroad Company had executed a first mortgage upon all the property, franchises, etc., etc., as provided in Section 3, 133, to secure first mortgage bonds of the Railroad Company for $850,000 only.

3. That bonds so secured were tendered by the Railroad Company to the Board of Supervisors to the amount of $33,000, and the Board requested to issue to the Railroad Company a like amount of county bonds in pursuance of Section 3, pp. 133, 134.

That the Railroad Company, prior to the application for said county bonds, and prior to doing the work hereinafter mentioned, had entered into a contract with Chenery, Binney & Co. for the constructing, furnishing and entire equipment of the railroad from Oroville, Butte county, to Marysville. (Statutes 1860.)

5. That the Railroad Company had, by its said contractors, entered upon the construction of the railroad between said points, and had, up to the time of said application for bonds, graded thirteen miles of said railroad.

6. That by the terms of the contract between relator and said Chenery, Binney & Co., the contract price for said thirteen miles of grading was $97,500, which sum was paid by the Railroad Company to said contractors in cash, in pursuance of the terms or said contract. The balance of the price for grading and fully completing the railroad and furnishing the rolling stock and equip-

ments, is payable in stock of the Company's first mortgage bonds and Butte county bonds to be issued under said act.

7. The amount of expenditures by the Company for said grading was ascertained and determined by the estimate of the chief engineer of the Railroad Company having charge of the construction thereof. It was upon such facts and estimate that the Company asked the issuance of bonds to the amount of one-third of said expenditures, viz: $33,000, claiming that the basis upon which the Butte county bonds are to be issued is the expenditures of the Company according to its contract price, and not the actual expenditures of the contractors or subcontractors under the Company. On the other hand, the Board of Supervisors assumed the right to inquire into the actual cost of such grading—that is, how many yards of earth were moved; what distance; how many yards of filling, of cuttings, of embankments, etc., etc., and what were the number of days' work of men and teams occupied in doing such grading, and all the minutiæ which make up the cost of doing such work; or, in other words, the Board entered into an estimate of what such grading actually cost, or was reasonably worth. The Board determined that such grading, instead of being worth $97,500—the price paid by the Company—was only worth $30,000, and made an order for the issuance of county bonds on that basis, viz: to the amount of $10,000.

The Board, in answer to the application for mandamus, plead: 1st, the proceeding of Clymer in the District Court in abatement, contending that during the ten days after their decision, they were prohibited by law from taking any action; 2d, that the issuance of bonds was matter of judicial discretion, and that having once acted in the matter, they cannot be again forced to act; 3d, that they had the power to estimate the value of the work done by the Railroad Company as the basis for the bonds.

The Court below held that the Board acted right in adopting as the basis for bonds to be issued the actual value of the work done, and hence denied the writ. Relator appeals.

*Jos. E. N. Lewis*, for Appellant.

1. The Board of Supervisors adopted a wrong basis upon which

to issue the bonds. The sum actually expended by the Company is the true standard.

2. Mandamus is the proper remedy. (Pract. Act, sec. 245 ; *Thompson* v. *Armstrong*, 7 Cal, 286 ; *Fremont* v. *Crippen*, 10 Id. 211 ; *People ex rel San Francisco Gas Co.* v. *Board Supervisors of San Francisco*, 11 Id. 42.

3. The proceedings taken by Clymer are no obstacle to the issuance of the writ ; such proceedings are not by *certiorari*, as provided by section three of the statute. When the writ of *certiorari* is provided for a review of a decision, it is not a cumulative remedy, it is the sole mode of review, and so the Court below held, refusing however to issue the mandate on other grounds.

*H. O. & W. H. Beatty*, for Respondents.

1. The Board could not issue the bonds until after the lapse of ten days from the time of their decision to issue only $10,000 of bonds. During that time any citizen and tax-payer had the right to review the proceedings, as Clymer was attempting to do.

2. Mandamus does not lie. The Board acted in the exercise of a discretion allowed them by law. (*McDougall* v. *Bell*, 4 Cal. 177 ; *Draper* v. *Noteware*, 7 Id. 276.)

3. Under the statute, the proceedings contemplated by the tax-payer is not a writ of *certiorari*, but an original proceeding by complaint and summons in the District Court, in which all the facts of the case can be inquired into.

4. The value of the work, and not the price paid the contractors, is the basis for the bonds.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

Application for mandamus to issue certain bonds.

By the Act of 1860, (Statutes, 134) bonds of the county of Butte were to be issued by the Supervisors in a certain contingency, defined in the act, to the Railroad Company, and this record involves the question whether, upon the facts stated in the petition and found by the Court, this contingency has happened. The following provision in section two of the Act bears upon the ques-

tion: "Whenever an estimate of expenditures shall be presented to said Board at any regular session by said Company, and it shall appear to their satisfaction that an amount not less than $6,000 of expenditures has been made, (exclusive of any cost of right of way and salary of officers) either in the construction of, or obtaining materials for, said road, and it shall likewise appear to their satisfaction that the amount of the first mortgage bonds do not exceed $850,000, and that there are not other liens or incumbrances or right of lien thereon, existing prior to the date of said first mortgage bonds, it shall in that event, and not otherwise, be the duty of said Board of Supervisors to issue and cause to be executed the bonds of said county for one-third of the estimate so made; and when said Company shall deliver to said Board an equal amount of its said first mortgage bonds, to deliver said county bonds at their par value to said Company, and continuously thereafter, upon estimates so made, in the ratio of one to three, until the whole $200,000 shall have been issued and expended."

The estimates, it seems, were made, and proof of expenditures, etc. But the Board of Supervisors refuse to issue bonds for more than $10,000, on the ground that the actual value of the work done was not the amount expended, but a less sum, and they construed the obligation to be to furnish bonds in an amount proportioned only to the actual value of the work, etc., etc. We think this was not the true standard. The basis is the actual expenditure. This *prima facie*, connected with the proof of the other facts, constitutes the claim upon the county for the bonds. Any other basis, besides being uncertain, and leading to embarrassing inquiries, is unwarranted by the express terms and evident spirit of the Act. If the expenditure was not really made, or fraud had been committed in the contracts, this might be a good defense to the county. But we do not understand this ground to be taken. The claim of the county is made to rest solely upon the construction before noticed. We think it inadmissible.

The point as to the mandamus not being the proper remedy is not sustained. We think the Board of Supervisors act ministerially in the issuance of bonds. (See *McCauley* v. *Brooks*, 16 Cal.)

It seems, however, that a technical difficulty is interposed by the

answer of the defendants, which is fatal to the proceeding in its present form. It is that this proceeding was begun before ten days had elapsed from the decision of the Board of Supervisors— a remonstrance having been made by a tax-payer, as provided by the second section of the act. The issuance of the bonds in such cases is directed to be suspended for ten days, to allow a contest in the District Court. We think that the effect of this was to authorize, indeed, to require the Board to refuse to issue the bonds for this period, and therefore it was not in default for this failure, and the plaintiff had no right of action in this or ·any other form to compel the performance of the alleged duty until the expiration of this period.

We agree with the learned Judge below, that the proceeding contemplated in the District Court by the tax-payer was a proceeding by *certiorari* in the form and according to the course of that writ; and that the issuance of the writ is necessary to stay the proceedings beyond the ten days, though probably no formal order of injunction be necessary.

We affirm the order of dismissal on the technical ground mentioned; but the effect of this affirmance is to permit the plaintiff to proceed again without prejudice from the judgment, if it shall be so advised.